NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

24-P-448                                            Appeals Court

COMMONWEALTH  vs.  ISRAEL ROSA FIGUEROA.

No. 24-P-448.

Bristol.      September 4, 2025. – July 7, 2026.

Present:  Sacks, Smyth, & Wood, JJ.


Rape.  Indecent Assault and Battery.  Minor.  Evidence, Prior
    misconduct.  Practice, Criminal, Instructions to jury.



Indictments found and returned in the Superior Court
Department on July 26, 2018.

The cases were tried before Brian S. Glenny, J.

Matthew J. Koes for the defendant.
Jennifer L. Thompson, Assistant District Attorney, for the
Commonwealth.


SMYTH, J.  Following a Superior Court jury trial on

thirteen indictments charging the defendant with sexually

abusing two minor children in his family (victim one and victim

two), the defendant was convicted of six counts of aggravated

rape, two counts of rape, and four counts of indecent assault

and battery with respect to victim one, and one count of

indecent assault and battery with respect to victim two. At trial, the Commonwealth presented prior bad act evidence through the two named victims and two prior bad act witnesses (JG and KG),[1] who were also related to the defendant. These four witnesses testified that the defendant abused the female children in his family on a near continuous basis from 2000 through 2018. On appeal, the defendant claims the convictions should be reversed because the judge abused his discretion by allowing the prior bad act witnesses' testimony to overwhelm the jury resulting in unfair prejudice to the defendant.

It has been long recognized that prior bad act evidence is "inherently prejudicial" (citation omitted). Commonwealth v. Crayton, 470 Mass. 228, 249 n.27 (2014). When prior bad act evidence, even when offered to show a common plan or some other legitimate purpose, is unduly emphasized and excessive in proportion to the evidence of the charged conduct, there is a risk that such evidence could unfairly prejudice the defendant by overwhelming the case and diverting the jury's attention from the charged offenses. See Commonwealth v. Dwyer, 448 Mass. 122, 128-129 (2006); Commonwealth v. Mills, 47 Mass. App. Ct. 500, 505 (1999) ("It has long been recognized that bad acts . . .

_____

[1] In accordance with G. L. c. 265, § 24C, we use pseudonyms for all four witnesses.

become dangerously confusing to the triers when piled on and unduly exaggerated").  This case illustrates that danger, as we conclude that the admission of extensive prior bad act evidence unfairly prejudiced the defendant and warrants a new trial.

Background.  1.  Commonwealth's motion to introduce prior bad acts.  The Commonwealth obtained two separate sets of indictments against the defendant in 2018 and 2019, respectively.  Victim one and victim two were the named victims in the 2018 set of indictments, which resulted in the convictions before us.  JG and KG were the named victims in the 2019 set of indictments.  All the indictments were consolidated in 2019.  However, on November 28, 2022, the trial judge allowed the defendant's motion to sever the 2019 set of indictments.  When ordering the 2019 indictments severed, the judge advised the prosecutor that the Commonwealth could move for the admission of the acts supporting the severed 2019 indictments as prior bad act evidence in the trial on the 2018 indictments.  The Commonwealth then filed a motion "to allow [JG and KG] to testify to the prior/subsequent sexual abuse perpetrated upon them by the defendant."  The judge allowed the Commonwealth's motion over the defendant's objection.[2]

_____

[2] Our references in this opinion to evidence of "prior bad acts" or "uncharged" conduct encompasses (1) uncharged conduct toward victims one and two (i.e., conduct not alleged in the 2018 set of indictments); and (2) both uncharged and charged

2. <u>The trial</u>. We summarize the four witnesses' testimony as follows.

a. <u>Named victims' testimony</u>. Victim one lived in the same duplex with the defendant beginning at an early age. The defendant abused victim one from the time she was about nine years old until she moved when she was fifteen years old. Specific to the charged offenses,[3] victim one testified that the defendant (1) touched or penetrated her vagina with his fingers, (2) forced her to suck his penis, (3) penetrated her anus with his penis, and (4) placed his tongue on or in her vagina.

The prosecutor also elicited substantial testimony of uncharged conduct from victim one. More specifically, victim one testified that the defendant on multiple occasions placed his penis between her breasts, sometimes ejaculating. The defendant also took photographs of her breasts, vagina, and anus.[4] According to victim one, the defendant sexually abused her "almost every day."

---

conduct toward JG and KG (including conduct alleged in the 2019 set of indictments), none of which constituted charged conduct for purposes of this trial.

[3] Victim one was the named victim in twelve indictments charging the defendant with eight counts of aggravated rape of a child and four counts of indecent assault and battery of a child.

[4] The prosecutor also elicited considerable other bad act testimony concerning the defendant's penile-vaginal penetrations of victim one. We do not consider this testimony in our

Victim two testified that she would occasionally go to the defendant's house after school. When victim two was about six years old, the defendant touched her vagina over her leggings while she was sitting on his lap. This conduct was the subject of a single indictment charging indecent assault and battery of a child.

Victim two also testified to uncharged conduct, namely that the defendant abused her by "hump[ing]" her "butt and like [her] vagina" on multiple occasions. The defendant was "usually wearing shorts but shirtless" when he "humped" victim two, and she could feel his penis on her body. She described "humping" as the defendant "like pushing his body and my body back and forth, like on him."

b. Prior bad act witnesses' testimony. JG testified that the defendant began sexually abusing her when she was eight years old and that the abuse continued every day until she was

determination of prejudice because it is not clear from the record -- in part because the numerous exchanges between the parties and the judge were deemed inaudible in the transcript -- whether the defendant preserved his objection to these uncharged acts. Neither party moved to reconstruct the record pursuant to Mass. R. A. P. 8 (e), as appearing in 481 Mass. 1611 (2019). In addition, the judge's transcribed rulings at sidebar, along with the parties' ensuing trial tactics, are difficult to reconcile with the judge's contemporaneous limiting instructions concerning the penile-vaginal penetrations of victim one. We note that the defendant on appeal does not press a claim of prejudice arising directly from this particular testimony.

sixteen years old.  The defendant first abused her by putting his penis outside her vagina and ejaculating.  The defendant's subsequent abuse included penetrating JG's vagina and mouth with his penis.  When JG was twelve or thirteen years old, the defendant told her that he wanted to impregnate her, and that they would move together to Puerto Rico.  The defendant also took photographs of JG after instructing her to pose naked.

KG testified that the defendant sexually abused her when she was between four and seven years old.[5]  The defendant made KG take his penis in her mouth, and he put his penis on the outside of her vagina.  KG estimated that the defendant sexually abused her "every day in the morning and after school."  The defendant also took photographs of her "private parts."

Discussion.  The defendant contends that the judge abused his discretion by allowing all four witnesses' prior bad act testimony to divert the jury's attention from and overwhelm the evidence of abuse for which the defendant was charged.  We agree.

1. Prior bad act evidence.  "It is well settled that the prosecution may not introduce evidence that a defendant previously has misbehaved, indictably or not, for the purposes

_____

[5] The indictments pertaining to KG allege the defendant sexually abused her between 2016 and 2018.

of showing his bad character or propensity to commit the crime charged." Commonwealth v. Helfant, 398 Mass. 214, 224 (1986). Prior bad act evidence may be admitted, however, where it is relevant for a nonpropensity purpose, such as to show "a common scheme, pattern of operation, absence of accident or mistake, identity, intent, or motive." Id. Where a defendant is charged with sexual assault, some evidence of similar forms of uncharged abuse toward other victims may be admissible to demonstrate a common course of conduct or to corroborate the named victim's testimony only if such conduct is connected "in time, place, or other relevant circumstances to the particular sex offense[s] for which the defendant is being tried." Commonwealth v. King, 387 Mass. 464, 470 (1982).

However, the admission of prior bad act evidence implicitly "carries with it a high risk of prejudice to the defendant." Commonwealth v. Barrett, 418 Mass. 788, 795 (1994). The potential prejudice is of several types:

> "Such evidence . . . confuses [the defendant] in his defen[s]e, raises a variety of issues, and thus diverts the attention of the jury from the [crime] immediately before it; and, by showing the defendant to have been a knave on other occasions, creates a prejudice which may cause injustice to be done him."

Commonwealth v. Anestal, 463 Mass. 655, 665 (2012), quoting Commonwealth v. Jackson, 132 Mass. 16, 20-21 (1882). Accordingly, evidence of prior or subsequent bad acts is

inadmissible if its probative value is outweighed, "even if not substantially outweighed," by the risk of unfair prejudice to the defendant.  Crayton, 470 Mass. at 249 n.27.  See Mass. G. Evid. § 404(b)(2) (2025).

Once prior bad act evidence is deemed admissible, the trial judge must be prepared to intervene during the trial to ensure that such evidence does not overwhelm the evidence of the charged conduct.  See Dwyer, 448 Mass. at 129; Commonwealth v. Roche, 44 Mass. App. Ct. 372, 380 (1998).  We review a judge's decision whether the probative value of prior bad act evidence is outweighed by the potential for unfair prejudice for abuse of discretion.  See Commonwealth v. Peno, 485 Mass. 378, 386 (2020).

Evidence of the defendant's sexual abuse of a child not named in the indictment may be admitted to show a common pattern with the indicted sexual offense, where the uncharged conduct shares a "temporal and schematic nexus" with the indicted offense.  Barrett, 418 Mass. at 794, quoting King, 387 Mass. at 470.  The probative value of such evidence depends not only on how similar the charged and uncharged offenses are to each other, but also on how distinctive or unusual they are.  See, e.g., King, 387 Mass. at 472 (prior bad act evidence was "logically probative" because distinctive form of uncharged sexual abuse, involving oral sex and use of dog, was closely

related to, and occurred around same time and at same place as, abuse charged in indictment).

However, even where the uncharged conduct evidence is highly probative, its lack of proportionality to the evidence of the crimes charged may render it unfairly prejudicial. In King, 387 Mass. at 472-473, the Supreme Judicial Court recognized the importance of proportionality in affirming the trial judge's admission of uncharged conduct evidence, where such evidence was limited to a witness's response to only two questions from the prosecutor and there was "extensive evidence" concerning the charged conduct (i.e., "the defendant's unnatural sexual acts with the victim"). Further minimizing the potential for unfair prejudice, the prosecutor did not reference the uncharged conduct evidence in the Commonwealth's closing argument. Id. at 469. These factors allowed the Supreme Judicial Court to conclude that the "trial was focused throughout on the specific crimes charged," rather than overwhelmed by evidence of uncharged offenses. Id. at 473.

The Supreme Judicial Court's subsequent decision in Dwyer, 448 Mass. at 124, 127-130, is instructive in our determination whether prior bad act testimony overwhelmed the case here. In Dwyer, supra at 128, the defendant was charged with two incidents of sexual abuse, yet the judge allowed the victim to testify in detail about seven different incidents of uncharged

sexual abuse.  Of the sixty-five transcript pages of the victim's direct examination, only fifteen pages covered the charged conduct, whereas twenty-one pages pertained to the uncharged sexual assaults.  See id.  When the prosecutor asked the victim to estimate the number of times the defendant had sexually abused her, the victim responded, "Uncountable."  Id. The Supreme Judicial Court concluded that the judge abused her discretion by failing to intervene during the trial to prevent this volume and detail of prior bad acts from overwhelming the case and diverting the jury's attention from the charged offenses.  See id. at 128-129.  This error caused the defendant overwhelming prejudice requiring reversal.  See id. at 129.

Here, as in Dwyer, 448 Mass. at 127-130, the volume of uncharged bad act evidence introduced by the Commonwealth substantially exceeded the testimony concerning the charged incidents.  The bad act testimony from the two prior bad act witnesses and the two named victims totaled forty-two transcript pages (with twenty-nine pages pertaining solely to the objected-to testimony of the two prior bad act witnesses).  By comparison, the two named victims' cumulative testimony concerning the charged offenses amounted to only twenty-six pages.

The potential for the prior bad act evidence to cause unfair prejudice is exemplified by the prosecutor's unchecked

elicitation of JG's detailed testimony recounting the years of daily abuse she endured from the defendant.  For instance, JG's account of how the defendant first abused her -- by rubbing his penis against her vagina until he ejaculated -- covered four transcript pages.  Our precedent has long recognized that prior bad act evidence should be limited and presented in summary fashion to avoid the potentially unfair prejudicial effect of such evidence.  See Commonwealth v. Facella, 478 Mass. 393, 408 (2017), citing Roche, 44 Mass. App. Ct. at 380-381, and Dwyer, 448 Mass. at 130.  See also King, 387 Mass. at 472.

However, where the charged conduct alleged is distinctive or unique, the relevant probative value of similar prior bad act evidence is high and, therefore, is less likely to be outweighed by a risk of unfair prejudice.  See Helfant, 398 Mass. at 227 (defendant doctor's uncharged acts of visiting patients at their homes, drugging them with Valium, and then sexually molesting them properly admitted to show "a distinctive pattern of conduct" that was "remarkably similar" to charged offense); Commonwealth v. Moran, 101 Mass. App. Ct. 745, 748 (2022) (prior bad act evidence properly admitted because "form of the acts [measuring body parts and using oil] bore striking similarity" to conduct underlying charged offense); Commonwealth v. Hanlon, 44 Mass. App. Ct. 810, 816-817 (1998) (prior bad act evidence properly admitted to show defendant priest's "unique and

insidious" scheme to isolate and rape altar boys and exploit each victim's family's close ties to Catholic Church).

Here, while the prior bad act witnesses' testimony detailed abuse that was similar to the named victims' accounts, and was thus undisputably highly probative, it was the excessive, disproportionate volume and detail of the evidence of uncharged abuse that created the risk of unfair prejudice. The alleged conduct was not so distinctive or unusual that its probative value outweighed this risk of unfair prejudice to the defendant. For example, the risk of the prior bad act evidence diverting the jury's attention from the charged offenses is illustrated by the amount of evidence introduced concerning a single prior bad act in which the defendant allegedly shaved JG's pubic hair before combining it with his own pubic hair in plastic bags. While limited evidence of this act could have been properly admitted to corroborate the named victims' accounts of the defendant's abuse, the emphasis on this bad act was excessive and disproportionate to the evidence concerning the charged offenses.[6] Contrast Commonwealth v. Cepulonis, 374 Mass. 487,

---

[6] The prosecutor presented this evidence through (1) JG's testimony, (2) a detective who testified about the retrieval of the bags of hair from the defendant's property, and (3) the introduction of three photographs of the bags of hair. The prosecutor also referenced the defendant's retention of JG's pubic hair multiple times in her closing argument.

498 (1978) ("trial judge showed commendable energy in controlling introduction" of other bad acts related to robbery such that that evidence did not receive "undue attention or emphasis"). This bizarre, fetishistic behavior attributed to the defendant was limited to his abuse of a single prior bad act witness and did not show a distinctive pattern of the defendant's conduct. Contrast Commonwealth v. Walker, 442 Mass. 185, 202 (2004); Helfant, 398 Mass. at 227.

The Commonwealth's opening statement and closing argument further exacerbated the potential unfair prejudice arising from the volume and detail of the cumulative prior bad act testimony. The Commonwealth's theme of its case, as announced in its opening statement, was that the defendant "was molesting the female children in this family." In her closing argument, the prosecutor conveyed this theme by drawing the jury's attention to specific uncharged bad acts before arguing that the jury should find the defendant guilty because he "preyed upon the children in this family." Considering the substantial bad act evidence introduced at trial, the prosecutor's closing argument increased the risk that the bad act evidence would divert the jury's attention from the charged acts. See Dwyer, 448 Mass. at 129 (court, in determining prejudice, considered prosecutor's closing argument that emphasized prior bad act evidence as years of "an ongoing basis of sexual assault"). See also Peno, 485

Mass. at 398. Contrast Commonwealth v. Nascimento-Depina, 496 Mass. 1, 9, cert. denied sub nom. Nascimento-Depina v. Massachusetts, 146 S. Ct. 260 (2025) (risk of prejudice "slight" where prosecutor "referred to the [prior bad act] evidence only briefly in closing"); Commonwealth v. McCowen, 458 Mass. 461, 479-480 (2010).

Although some testimony from the prior bad act witnesses could have been properly admitted to corroborate the victims' accounts and show a course of conduct, we conclude that the judge replicated the error in Dwyer, 448 Mass. at 129, by failing to prevent the volume and detail of the prior bad act evidence from overwhelming the case. See Roche, 44 Mass. App. Ct. at 380 ("a judge must guard against the danger of overwhelming a case with . . . bad act evidence"); Commonwealth v. Sapoznik, 28 Mass. App. Ct. 236, 241 n.4 (1990) (to prevent unfairly prejudicial use of prior bad act testimony, "the judge should have interjected himself into the trial, even in the absence of an objection from the defendant"). The admission of such extensive bad act evidence detailing the defendant's abuse of the four witnesses in a multitude and variety of manners, in private and public spaces, and on a near daily basis over a span of eighteen years -- which evidence was unduly emphasized and excessive in proportion to the charged conduct evidence -- created a risk that the jury would view the defendant as having

a propensity to sexually abuse young female relatives. The volume, detail, and emphasis on the objected-to prior bad act evidence in this case thus raises the fundamental concern that the jury would be overwhelmed by this evidence and convict the defendant on an impermissible basis. See Peno, 485 Mass. at 398, citing Crayton, 470 Mass. at 250-251, 254; Dwyer, 448 Mass. at 128-129. Contrast Nascimento-Depina, 496 Mass. at 9 (risk of unfair prejudice from prior bad acts slight where prosecutor made limited inquiry into uncharged conduct and related testimony lacked detail); King, 387 Mass. at 472-473; Commonwealth v. Childs, 94 Mass. App. Ct. 67, 74 (2018) (prior bad act evidence did not overwhelm case where "the bulk of the victim's testimony and all four Commonwealth exhibits concerned the charged conduct"); Commonwealth v. Robertson, 88 Mass. App. Ct. 52, 58 (2015) (prior bad act evidence did not overwhelm jury where witness's testimony was brief and not "extremely detailed").

The judge could have prevented the cumulative effect of JG's and KG's bad act evidence from overwhelming the jury by either limiting the volume and detail of such evidence prior to trial, or intervening during trial by reducing the prior bad act testimony and instructing the prosecutor to refrain from emphasizing such evidence during closing argument. See, e.g., Helfant, 398 Mass. at 225 (trial judge, who was "commendably

sensitive to the potential for undue prejudice . . . , conducted a voir dire and strictly limited the scope of the two [prior bad act] witnesses' testimony"); Commonwealth v. Imbruglia, 377 Mass. 682, 695 (1979) (trial judge, by excluding some prior bad act evidence, requesting prosecutor to limit references to such evidence, and repeating limiting instructions, "was careful to keep the trial focused on the specific crimes charged").

In concluding that the bad act evidence overwhelmed the jury in this case, we reject the Commonwealth's contention that the judge's instructions adequately mitigated the risk of the potential for unfair prejudice.  Although the judge properly instructed the jury that they could not consider the objected-to prior bad act evidence as proof that the defendant had a criminal personality or bad character, the judge did not adequately instruct the jury that they could consider the evidence only for limited, nonpropensity purposes.  Instead, the judge adopted the Commonwealth's proposed instruction by advising the jury, contemporaneously to JG's and KG's respective testimony, that they may consider the bad act evidence to show "motive, opportunity, state of mind, intent, preparation, plan, pattern of conduct, relationship between the [d]efendant and a victim, knowledge, identity, absence of mistake, or accident."[7]

_____

    [7] In his final charge, the judge instructed the jury on the prior bad act evidence as follows:

We take this opportunity to repeat the Supreme Judicial Court's emphasis on "the importance of specificity and precision in the context of ruling on bad act evidence." Commonwealth v. Samia, 492 Mass. 135, 148 n.8 (2023). As stated in Samia, supra,

> "[p]ractitioners should avoid justifying the admission of bad act evidence simply by reciting a list of permissible nonpropensity purposes that have been previously accepted by this court or discussed in Mass. G. Evid. § 404(b) & note. Proffering a laundry list of nonpropensity purposes is not helpful, nor is it proper. Indeed, it is counterproductive. Rather, counsel proffering bad act evidence should articulate the precise nonpropensity purpose for the proffered evidence, and the judge should instruct the jury that they may consider the evidence only for that narrow nonpropensity purpose."

---

> "Israel Rosa Figueroa is not charged with committing any crime other than the crimes charged in the indictments. You have heard testimony about acts of sexual misconduct allegedly done by Israel Rosa Figueroa with [JG] and [KG]. You may not take that as a substitute for proof that Israel Rosa Figueroa committed the crimes charged, nor may you consider it as proof that Israel Rosa Figueroa has a criminal personality or bad character.

> "However, you may consider this information solely on the limited issue of showing motive, opportunity, state of mind, intent, preparation, plan, pattern of conduct, relationship between a victim and a defendant, knowledge, absence of mistake, or accident.

> "You may not consider this evidence for any other purpose. Specifically, you may not use it to conclude that if Israel Rosa Figueroa committed the other act he must also have committed the crimes charged in this case."

Here, however, even if the instructions had been forceful and narrowly tailored to the evidence, the prior bad act evidence in this case was so voluminous, "the risk that the jury will not, or cannot, follow [even proper] instructions [was] so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." Commonwealth v. McCaffrey, 36 Mass. App. Ct. 583, 588 (1994), quoting Commonwealth v. De Christoforo, 360 Mass. 531, 548 (1971). "Such a risk obtains '[p]articularly in sexual assault cases [where] the extraneous evidence may have a gripping quality and asking the jury to disregard it may be tantamount to asking the jury to ignore that an elephant has walked through the jury box'" (citation omitted). McCaffrey, supra. See Commonwealth v. Elliot, 393 Mass. 824, 834 (1985) ("where the evidence subject to limitations has an extremely high potential for unfair prejudice, we have a duty to be skeptical as to the effectiveness of limiting instructions" [citation omitted]).

2. Prejudicial error. As the defendant timely objected to the admission of the prior bad act testimony of JG and KG, we review for prejudice.[8] Commonwealth v. Correia, 492 Mass. 220,

_____

[8] The defendant's arguments supporting his objections, in both his motion in limine and during argument at trial, to the admission of the prior bad acts included his claims that the prior bad acts were being offered as propensity evidence, and

232 (2023). "An error is nonprejudicial only if we are convinced that the error did not influence the jury, or had but very slight effect" (quotation and citation omitted). Peno, 485 Mass. at 399. "To decide whether the errors at trial amounted to prejudicial error, we must determine, after pondering all that happened without stripping the erroneous action from the whole, [whether] the judgment was not substantially swayed by the error" (quotation and citation omitted). Id. In making this determination, we consider a nonexhaustive list of factors, including "the frequency of the improper references; whether the error was central to the trial; the strength of the Commonwealth's case; whether limiting instructions mitigated the error; and whether the jury were able to sort between the permissible and impermissible evidence such that the defendant was not prejudiced by the error." Correia, 492 Mass. at 232.

---

that the volume of the acts would unfairly prejudice the defendant. This argument was sufficient to preserve the defendant's claim on appeal that the prior bad act evidence as introduced overwhelmed the evidence of charged conduct. See Commonwealth v. Bohigian, 486 Mass. 209, 219 (2020), citing Commonwealth v. Grady, 474 Mass. 715, 718-719 (2016). See also Commonwealth v. McDonagh, 480 Mass. 131, 138 (2018) ("An objection adequately preserves the claimed error so long as counsel makes known to the court the action which he desires the court to take or his objection to the action of the court" [quotations and citation omitted]). The Commonwealth does not contend otherwise.

We are not convinced the jury was not influenced by the admission of the objected-to prior bad act evidence.  The prior bad act witnesses' testimony went to the heart of the issue at trial, i.e., each victim's credibility, by developing a pattern of abuse that corroborated the named victims' accounts of sexual abuse.  The Commonwealth's case was not overwhelming, as there was no conclusive forensic or other compelling corroborative evidence.[9]  See Commonwealth v. Santiago, 425 Mass. 491, 503 (1997), S.C., 427 Mass. 298 and 428 Mass. 39, cert. denied, 525 U.S. 1003 (1998) (error prejudicial where evidence of defendant's guilt "was not so overwhelming as to overcome the errors"); Commonwealth v. Misquina, 82 Mass. App. Ct. 204, 207-208 (2012) (errors prejudicial where evidence against defendant was not overwhelming but reliant on victim's credibility).  Contrast Commonwealth v. Cronin, 495 Mass. 170, 181 (2025) (error nonprejudicial where evidence against defendant was

---

[9] The defendant, who did not testify, presented a defense where he denied the charges, challenged the victims' and prior bad act witnesses' credibility and motives for reporting the sexual abuse, argued that victim one's report influenced the other victims, emphasized that there was no corroborating evidence for the charged offenses, and argued that the Commonwealth used the prior bad act witnesses to pile on uncharged accusations to improperly establish propensity to commit the charged crimes.  The defendant further claimed during trial, and now argues on appeal, that his defense strategy was adversely affected by the admission of the volume of prior bad act evidence.

overwhelming); <u>Peno</u>, 485 Mass. at 400-402 (erroneous admission of prior bad act evidence did not unfairly prejudice defendant in light of other compelling incriminating evidence, including defendant's own statements and conduct).  The quantity of the objected-to prior bad act evidence presented an enormous risk that the jury would impermissibly conclude that the excessive evidence showing the defendant's protracted sexual abuse of the children in his family established his propensity to commit the charged crimes.  Because we are not satisfied that the defendant received a trial free of undue prejudice, the defendant is entitled to a new trial, should the Commonwealth choose to pursue one.[10]

<u>Judgments vacated</u>.

<u>Verdicts set aside</u>.

---

[10] The defendant also claims errors in (1) the admission of first complaint testimony as part of the prior bad act evidence, and (2) a prior bad act witness improperly opining that the defendant was abusing one of the named victims.  Because we conclude that the prior bad act witnesses' testimony unfairly prejudiced the defendant, we do not reach these issues.